AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
### Southern District of California



FILED

JUL 10 2019

SOUTHERN DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    PUTY

'19 MJ 2880

|  |  |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One (1) Black Apple iPhone Cellular Telephone<br>Model: MQ6Y2   IMEI: 352989094457437<br>IMSI: 310260917879280  Serial: F4GWDPRJJC67 | )<br>)<br>)<br>)<br>)<br>)     Case No. |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, as fully incorporated herein.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, as fully incorporated herein

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. §1324 | Alien smuggling |
| 18 U.S.C. § 201 | Bribery of a Public Official |

The application is based on these facts:
See attached affidavit, incorporated fully herein

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kathia Carl, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __7/10/19__

_____
*Judge's signature*

City and state: San Diego, California

William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

> One (1) Black Apple iPhone Cellular Telephone
> Model: MQ6Y2
> IMEI: 352989094457437
> IMSI: 310260917879280
> Serial: F4GWDPRJJC67
> **(Target Device)**

**Target Device** is currently in the possession of the San Diego Police Department, located at 1401 Broadway, San Diego, CA 92101.

## **ATTACHMENT B**
## ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below.  The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of October 1, 2017, to April 25, 2019:

    a.    tending to indicate efforts to coordinate alien smuggling, weapons trafficking, or efforts to share sensitive law enforcement information used in furtherance of any other illegal activities, such as alien smuggling or weapons trafficking;

    b.    tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the coordination of alien smuggling, weapons trafficking, or efforts to share sensitive law enforcement information used in furtherance of any other illegal activities, such as alien smuggling or weapons trafficking;

    c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, weapons trafficking, or bribery of public officials used to facilitate any other illegal activities, such as alien smuggling or weapons trafficking;

    d.    tending to identify travel to or presence at locations involved in alien smuggling, weapons trafficking, or bribery of public officials used to facilitate any other illegal activities, such as alien smuggling or weapons trafficking;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 8 United States Code, Section 1324, Alien Smuggling; and Title 18 United States Code, Section(s) 201 and 371, Bribery of a Public Official and Conspiracy to commit any and all of these offenses.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>One (1) Black Apple iPhone Cellular Telephone<br>Model: MQ6Y2<br>IMEI: 352989094457437<br>IMSI: 310260917879280<br>Serial: F4GWDPRJJC67 | **AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT** |

I, Kathia Carl, a Special Agent with the United States Department of Justice, Federal Bureau of Investigation, having been duly sworn, depose and state as follows:

## INTRODUCTION

1.     This affidavit supports an application for a warrant to search the following electronic device:

> One (1) Black Apple iPhone Cellular Telephone
> Model: MQ6Y2
> IMEI: 352989094457437
> IMSI: 310260917879280
> Serial: F4GWDPRJJC67
> (**Target Device**), as described in Attachment A.

2.     San Diego Police Department (SDPD) officers seized the **Target Device** on April 25, 2019, from Ivan Heriberto RAMIREZ ("RAMIREZ") at the time he was arrested for violation of California Penal Code Sections: 30605(a), Possession of an assault weapon; 30305(a), Felon in possession of ammunition; and 29800(a)(1), Felon in possession of a firearm (2 counts).  The **Target Device** is currently in the possession of the San Diego Police Department, 1401 Broadway, San Diego, CA 92101.

3.     Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of violations of 8 U.S.C. §1324, 18 U.S.C. §201, and 18 U.S.C. §371, as described in Attachment B.

1

**EXPERIENCE AND TRAINING**

4.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since September of 2012. I am currently assigned to the San Diego Field Office, and have been assigned to handle public corruption and border corruption cases as a member of the Border Corruption Task Force. I am charged with investigating allegations of corrupt federal, state, and local public officials that engage in criminal activity for profit, power, as well as those criminal associates who bribe and conspire with any corrupt federal, state, or local public officials. I have received training in all the field and jurisdictions handled by the FBI, and have received additional training in public corruption and border corruption. Prior to my employment with the FBI, I was a commissioned officer and held the rank of Major in the United States Marine Corps.

5.      I have investigated all aspects of public and border corruption, including bribery, drug trafficking, weapon trafficking, and alien smuggling. I have investigated cases involving the use of cellular telephones to coordinate and communicate aspects of corrupt activity and sharing sensitive law enforcement information for items of value. I have interviewed and operated informants, executed search warrants, facilitated the purchase of drugs and evidence, facilitated the smuggling of suspected undocumented aliens, arrested and interviewed subjects, conducted physical surveillances, utilized electronic and video surveillance, and testified in grand jury and in federal trials. From my training and experience, I have become familiar with the techniques and methods utilized by corrupt federal, state, or local public officials and their co-conspirators. In addition to the above stated experience, I have also worked and consulted with numerous federal agents and other law enforcement officers who have investigated public corruption, border corruption, prison corruption, drug and weapon trafficking, and alien smuggling throughout the United States, including Southern California.

6.      Through the course of my training, investigations, and conversations with other federal agents and local law enforcement personnel, I am aware that it is a common practice for corrupt federal, state, or local public officials to work in concert with other

individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities and actively share sensitive law enforcement information. It is my experience that corrupt federal, state, and local public officials often compromise their official positions by performing illegal acts in exchange for some form of payment and receive bribe payments in a variety of forms, including but not limited to: cash, money orders, gift cards, tangible and intangible property, objects of value, sexual favors, or merely a promise to induce of influence an official action.

7.     Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in public corruption investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

        a.     Corrupt federal, state, and local public officials will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, data, messenger services, and voice messages;

        b.     Corrupt federal, state, and local public officials will use cellular telephones because they are able to actively receive requests and provide sensitive law enforcement information being requested by co-conspirators while at work, with access, and serving in their official capacity;

        c.     Corrupt federal, state, and local public officials will use cellular telephones to notify or warn their accomplices of law enforcement activity and/or share sensitive law enforcement information which is used in furtherance of other illegal activities, such as alien smuggling, weapons trafficking, and drug trafficking; and

        d.     The use of cellular telephones by corrupt federal, state, and local public officials and co-conspirators tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

8.     Subscriber Identity Module ("SIM") Cards are smart cards that store data for GSM cellular telephone subscribers.  Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages.  Much of the evidence generated by a user of a cellular telephone would likely

1  be stored on any SIM Card that has been utilized in connection with that telephone.

2      9.    In preparing this affidavit, I have conferred with other agents and law

3  enforcement personnel who are experienced in the area of public corruption investigations,

4  and the opinions stated below are shared by them.  Further, I have personal knowledge of

5  the following facts, or have had them related to me by persons mentioned in this affidavit.

6  This statement is made in support of an application for a warrant to search a cellular

7  telephone that is believed to contain evidence of violations of 8 U.S.C. §1324, 18 U.S.C.

8  §201, and 18 U.S.C. §371.

9      10.    Because this affidavit is being submitted for the limited purpose of establishing

10  probable cause to obtain a search warrant, it does not contain all of the information known

11  to federal agents regarding this investigation.  Instead, it contains only those facts believed

12  to be necessary to establish probable cause.  In addition, information contained in this

13  affidavit is based upon reviews of official reports and records, upon conversations with

14  other FBI Special Agents, local law enforcement officers, and my personal observations

15  and knowledge.  When the contents of documents or statements of others are reported

16  herein, they are reported in substance and in part unless otherwise indicated.

17  **FACTS SUPPORTING PROBABLE CAUSE**

18      11.    On April 25, 2019, at approximately 2:20 a.m., San Diego Police Department

19  Officers responded to a call for service regarding a kidnapping in progress, where the

20  victim's mother, Diana Sierra (Sierra) reported that her son, Diego Fernando Sierra (Diego),

21  sent her text messages implying he was taken at gun point against his will.  Officers

22  promptly responded to Sierra's residence, located at 1161 25th Street, Unit 107, San Diego,

23  California 92154 to evaluate the circumstances of the alleged kidnapping.

24  

25      12.    Upon arrival, SDPD officers reviewed the electronic communication between

26  Diana and Diego.  Officers discovered Diego mapped himself near a residential

27  neighborhood within the city of Spring Valley, by dropping a digital 'pin' via a mobile phone

28  application known as "WhatsApp." Additional SDPD Officers were dispatched to the map

4

coordinates displayed on Diana's cellular device, which was near the 1300 block of Helix Street, Spring Valley, California, 91977.

13.     Upon arrival, Officers made contact with the alleged kidnapping victim outside the residence. The alleged victim provided officers with his California Driver's License and was positively identified as Diego Fernando Sierra. Diego pointed directly towards the residence of 1392 Helix Street, Spring Valley, California, 91977 (Subject Residence) and explained to the officers that the subjects who kidnapped him were inside of the Subject Residence. Diego further stated that there were multiple firearms inside of the Subject Residence and each member of the household had handled the said firearms.

14.     While officers maintained a secure perimeter of the Subject Residence, verbal commands were given for any other occupants of the Subject Residence to exit. As a result, five occupants of the Subject Residence were identified. Two of the occupants were residents—Rubio Guillermo (Guillermo) the homeowner, and his tenant Ivan Ramirez (RAMIREZ). RAMIREZ had three companions with him, who were positively identified as Miguel Eduardo Parra (Parra), Louis Carrillo (Carrillo), and Christian Pollard (Pollard).

15.     RAMIREZ's record check revealed numerous prior criminal offenses, which included a prior felony conviction on June 12, 2013, for evasion, risking the public's safety, in violation of 2800.2(a) of the California Vehicle Code. RAMIREZ was sentenced to probation and was discharged from probation status on August 13, 2018. Due to RAMIREZ's prior conviction of a felony crime, he was no longer legally capable of having dominion or control of any firearms or ammunition.

16.     Officers conducted a safety search of the Subject Residence to ensure there were no other potential victims inside. During the safety search, an Officer observed a small magazine with ammunition contained inside of it in plain view.

17.     Both Guillermo and RAMIREZ provided verbal consent to SDPD officers and detectives to search their rooms and all the common areas. The following items were found: one (1) Beretta Tomcat pistol; one (1) Rossi interarms revolver; one (1) AR rifle; two (2) 50 round boxes of .223 'Remington'-brand ammunition; and one (1) 12 round

5

box of 'Tulammo' brand .223 ammunition.

18.     RAMIREZ also provided officers consent to search his bedroom. In his bedroom, on the floor adjacent to the bed, was a magazine for a Beretta Tomcat handgun. Additionally, inside of RAMIREZ's dresser drawer, there were additional boxes of ammunition and customizable handgrips fit for the Beretta Tomcat handgun. On top of the dresser drawer was a wallet containing RAMIREZ's U.S. Passport Identification Card. Additionally, a California Identification Card was located in the top drawer, which also contained the boxes of ammunition. In my training and experience, personal identification left in the manner discovered is indication of dominion and control.

19.     After the conclusion of the search and the investigation into Diego's alleged kidnapping, RAMIREZ was placed under arrest for the offenses of California Penal Code section(s): 30605(a): Felon in possession of an assault weapon; 30305(a): Felon in possession of ammunition; and 29800(a): Felon in possession of a firearm.

20.     At the time of the arrest, RAMIREZ was in possession of **Target Device** which was seized and later impounded at the SDPD Headquarters, located at 1401 Broadway, San Diego, California 92101.

21.     RAMIREZ was living at Subject Residence; however, on RAMIREZ's various documents, including his home address documented with the San Diego Sheriff Department, was 923 Paraiso Avenue, Spring Valley, California 91977.

22.     On May 7, 2019, SDPD obtained RAMIREZ's phone call conversations from the San Diego Sheriff Department Detention facility, where he remained from the date of his arrest on April 25, 2019, to when he was released on bond, on May 4, 2019. According to the phone conversations between Gwen (known to officers as RAMIREZ's girlfriend) and RAMIREZ, there was questioning by Gwen asking verbatim, "Are they dirty" with RAMIREZ responding, "I don't know, they were clean." In my training and experience, with the circumstances regarding the cause of RAMIREZ's arrest, I believe the reference of "they" was regarding the firearms located in RAMIREZ's residence. Following the discussion of the firearms, RAMIREZ stated, "they took my phone too" and elaborated in Spanish, "They'll see it and it will screw me more." Gwen then responded in Spanish,

6

"You should've broken it."  The phone call discussion then turned into RAMIREZ asking Gwen if there were methods of destroying the data on his phone remotely.

23.    On May 8, 2019, SDPD obtained a search warrant for RAMIREZ's cellular telephone 619-966-6395.  The following items of interest were located on the phone: photographs and discussions regarding firearms trafficking, photographs of California Identification Cards, and iMessage conversations with an individual named "Erik Fed" saved under telephone number 931-802-3034.

24.    On an iMessage conversation occurring from approximately January 30, 2019, to February 1, 2019, RAMIREZ (619-966-6395) and Eric Fed (931-802-3034) discussed the following:

| | |
|---|---|
| RAMIREZ: | *Hey* |
| Eric Fed: | *Yo* |
| RAMIREZ: | *Can you look someone up?* |
| Eric Fed: | *I can't personally but I can ask someone* |
| RAMIREZ: | *Pleas* |
| RAMIREZ: | *(Attachment IMG_2776.jpg)* |
| Eric Fed: | *K* |
| RAMIREZ: | *How long you think* |
| Eric Fed: | *Hopefully tomorrow* |
| RAMIREZ: | *Ok cool* |
| Eric Fed: | *Record check* |
| RAMIREZ: | *I think she's locked up I think* |
| Eric Fed: | *Feds?* |
| Eric Fed: | *If she's in my building than yes I can.* |
| Eric Fed: | *If not I gotta ask* |
| RAMIREZ: | *Yeah* |
| RAMIREZ | *Feds* |
| Eric Fed: | *Koo"* |
| RAMIREZ: | *Hey* |
| RAMIREZ: | *Anything* |
| RAMIREZ: | *If you can't do it let me know thanks* |
| Eric Fed: | *Nothing came up for our spot. I haven't seen my boy that runs the full 1.* |

25.    The image attachment "IMG_2776.jpg" sent by RAMIREZ to Eric Fed was identified as California Identification Card number Y81877102 and belonged to Kaila Oh Savangsengouthay ("Savangsengouthay"), date of birth 07/07/1999.

7

26.    A records check was conducted on Savangsengouthay which revealed incident 2019AR0011604. On January 29, 2019, at the San Ysidro port of entry, Savangsengouthay was driving a 2005 Nissan Maxima and sent to secondary inspection. During secondary inspection, two Chinese citizens were removed from the trunk of her vehicle. Savangsengouthay was charged with alien smuggling, in violation of 8 U.S.C. §1324 and served a $5,000 USD penalty notice.

27.    On June 13, 2019, SDPD provided the FBI a review of the items of interest found on RAMIREZ's phone, to include photographs and discussions regarding firearms trafficking, photographs of California Identification Cards, and iMessage conversations with the individual named "Erik Fed."

28.    Open source research on telephone number 931-802-3034 indicated the number is subscribed to by Erik Kevin HYDE ("HYDE"), home address 917 Paraiso Avenue, Spring Valley, CA 91977 (917 Paraiso Avenue).  It is significant to note that HYDE's residence is next door to an address RAMIREZ uses, 923 Paraiso Avenue, Spring Valley, CA 91977 (923 Paraiso Avenue).

29.    On June 24, 2019, Agents verified with a Bureau of Prisons Task Force Officer that HYDE was currently employed by the Bureau of Prisons at the Metropolitan Correction Center in San Diego, CA. HYDE's approximate employment start date was in October 2017.

30.    Inasmuch as the state search warrant was predicated upon evidence related to RAMIREZ's Felon in Possession charges, this federal search warrant is being obtained in order to complete a more comprehensive search of the **Target Device** for evidence of the violations enumerated below.  Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the **Target Device** contains violations of 8 U.S.C. §1324, 18 U.S.C. §201, and 18 U.S.C. §371, including communications, records, or data, but not limited to emails, text messages, other social messaging applications (such as WhatsApp or Facebook) photographs, audio files, videos, or location data:

8

a.   tending to indicate efforts to coordinate alien smuggling, weapons trafficking, or efforts to share sensitive law enforcement information used in furtherance of any other illegal activities, such as alien smuggling or weapons trafficking;

b.   tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the coordination of alien smuggling, weapons trafficking, or efforts to share sensitive law enforcement information used in furtherance of any other illegal activities, such as alien smuggling or weapons trafficking;

c.   tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, weapons trafficking, or bribery of public officials used to facilitate any other illegal activities, such as alien smuggling or weapons trafficking;

d.   tending to identify travel to or presence at locations involved in alien smuggling, weapons trafficking, or bribery of public officials used to facilitate any other illegal activities, such as alien smuggling or weapons trafficking;

e.   tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

31.   Based upon my experience and investigation in this case, I believe that HYDE is providing law enforcement information to RAMIREZ, who is a convicted felon and involved in alien smuggling and weapons trafficking activities. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling, weapons trafficking and bribery, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the facilitation of law enforcement sensitive information related to the illegal activities of RAMIREZ, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of **Target Device.**

32.   Based upon a review of home of records for both individuals and the date of employment for HYDE with the Bureau of Prisons, evidence supports probable cause that

1  HYDE has potentially been providing law enforcement information to RAMIREZ as early
2  as October of 2017.   Open source research indicates HYDE has been the owner of
3  917 Paraiso Avenue since on or about December 6, 2013.   According to a search of law
4  enforcement databases, RAMIREZ has used the 923 Paraiso Avenue as his residential
5  address as early as November 2005.  Furthermore, HYDE began working for the Bureau of
6  Prisons in or about October 2017.  Given these facts, it is reasonably logical to presume that
7  the relationship between HYDE and RAMIREZ pre-dates HYDE's employment with the
8  Bureau of Prisons in October 2017; therefore, I respectfully request permission to search
9  **Target Device** for data beginning on October 1, 2017, up to and including April 25, 2019.

10                                    **METHODOLOGY**

11         It is not possible to determine, merely by knowing the cellular/mobile telephone's
12  make, model and serial number, the nature and types of services to which the device is
13  subscribed and the nature of the data stored on the device.  Cellular/mobile devices today
14  can be simple cellular telephones and text message devices, can include cameras, can serve
15  as personal digital assistants and have functions such as calendars and full address books
16  and can be mini-computers allowing for electronic mail services, web services and
17  rudimentary word processing.  An increasing number of cellular/mobile service providers
18  now allow for their subscribers to access their device over the internet and remotely destroy
19  all of the data contained on the device.  For that reason, the device may only be powered in
20  a secure environment or, if possible, started in "flight mode" which disables access to the
21  network.   Unlike typical computers, many cellular/mobile telephones do not have hard
22  drives or hard drive equivalents and store information in volatile memory within the device
23  or in memory cards inserted into the device.  Current technology provides some solutions
24  for acquiring some of the data stored in some cellular/mobile telephone models using
25  forensic hardware and software.  Even if some of the stored information on the device may
26  be acquired forensically, not all of the data subject to seizure may be so acquired.  For
27  devices that are not subject to forensic data acquisition or that have potentially relevant data
28  stored that is not subject to such acquisition, the examiner must inspect the device manually

1  and record the process and the results using digital photography.  This process is time and
2  labor intensive and may take weeks or longer.

3      Following the issuance of this warrant, I will collect the subject cellular/mobile
4  telephone and subject it to analysis.  All forensic analysis of the data contained within the
5  telephone and its memory card(s) will employ search protocols directed exclusively to the
6  identification and extraction of data within the scope of this warrant.

7      Based on the foregoing, identifying and extracting data subject to seizure pursuant to
8  this warrant may require a range of data analysis techniques, including manual review, and,
9  consequently, may take weeks or months.  The personnel conducting the identification and
10  extraction of data will complete the analysis within ninety (90) days, absent further
11  application to this court.

12                                  **CONCLUSION**

13      33.    Based on all of the facts and circumstances described above, there is probable
14  cause to conclude that Ivan Heriberto RAMIREZ used the **Target Device** to facilitate
15  violations of Title 8 United States Code, Section 1324; and Title 18 United States Code,
16  Section(s) 201 and 371.

17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

1      34.    Because the **Target Device** was promptly seized during the investigation of

2  RAMIREZ's activities and has been securely stored, there is probable cause to believe that

3  evidence of illegal activities committed by RAMIREZ and HYDE continue to exist on the

4  **Target Device**. As stated above, I believe that the date range for this search is from

5  October 1, 2017, to April 25, 2019.

6      THEREFORE, I request that the court issue a warrant authorizing law enforcement

7  agents and/or other federal and state law enforcement officers to search the items described

8  in Attachment A, and the seizure of items listed in Attachment B, using the methodology

9  described above.

11  I swear the foregoing is true and correct to the best of my knowledge and belief.

Kathia Carl
Special Agent
Federal Bureau of Investigation

17  Subscribed and sworn to before me this ___10___ day of July, 2019.

19  The Honorable William V. Gallo
United States Magistrate Judge

12